# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp |
| v. | : | Mag. No. 11-6081 |
| YUAN LI | : | **CRIMINAL COMPLAINT** |
| | : | **FILED UNDER SEAL** |

I, Brett Yeager, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Brett Yeager, Special Agent
Federal Bureau of Investigation

Sworn to before me, and
subscribed in my presence

June 27, 2011 at 5:15 p.m.
Newark, New Jersey

_____
Signature of Judicial Officer

HONORABLE MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

Between on or about January 1, 2010 and on or about June 27, 2011, in Somerset County, in the District of New Jersey and elsewhere, defendant

YUAN LI,

with the intent to convert a trade secret related to and included in a product for and placed in interstate and foreign commerce, namely chemical compounds developed by Sanofi Aventis for pharmaceutical and healthcare applications, and with the intent to convert said trade secret to the economic benefit of parties other than Sanofi Aventis, and intending or knowing that the offense will injure Sanofi Aventis, did knowingly steal, take, carry away, and conceal such information, or attempt to do the same.

In violation of Title 18, United States Code, Sections 1832(a)(1), 1832(a)(4) and 2.

## ATTACHMENT B

I, Brett M. Yeager, a Special Agent of the Federal Bureau of Investigation, have knowledge of the following facts based upon my investigation and discussions with witnesses and other law enforcement agents. Since this affidavit is submitted for the limited purpose of establishing probable cause to support the issuance of a complaint and arrest warrant, I have not included each and every fact known by the government concerning this investigation.

### Sanofi Aventis and its Trade Secrets.

1. Sanofi Aventis ("Sanofi") is a global healthcare company, whose United States Headquarters is located in Bridgewater, New Jersey. Among other things, Sanofi is engaged in the development, manufacture and marketing of healthcare products. For example, Sanofi owns and produces such prescription drugs as Allegra, Plavix, Copaxone, and Ambien. In addition, Sanofi develops and sells other prescription and over-the-counter pharmaceuticals.

2. Through investment in research and development, Sanofi has become one of the leading manufacturers of healthcare products globally. It is critical to Sanofi's success that its research and development for its future products remain secret. Sanofi's competitors could benefit greatly from this secret knowledge by learning what compounds Sanofi is developing or using as part of its ongoing efforts to find future successful drugs.

3. Sanofi takes many steps to protect its trade secrets and its confidential and proprietary information. Among other things, Sanofi requires employees to sign, as a condition of their employment, a confidentiality agreement in which each Sanofi employee agrees to refrain from disclosing any confidential information to third parties and from using any such information for personal purposes. In addition, Sanofi specifically requires that its employees agree that they will protect Sanofi's trade secrets, and that they will assign any rights in any inventions or research conducted or developed while employed at Sanofi to Sanofi.

4. Sanofi also repeatedly informs and reminds its employees on an ongoing basis of the confidential and proprietary nature of its business and product development by requiring employees to participate in its annual web-based security and confidentiality training.

5. Sanofi restricts physical access to its Bridgewater facilities – as well as other facilities – and requires visitors to register and wear badges.

6. Sanofi researchers use lab notebooks when they are working on research and development laboratory studies, which studies by their very nature constitute Sanofi's trade secrets. It is standard Sanofi procedure that each experimental procedure is signed by the scientist and countersigned by another scientist. To maintain the security of lab notebooks and the trade secrets therein, each lab notebook must be individually requested by a scientist and is logged in Sanofi's systems. Sanofi expects its scientists to lock all lab notebooks in desk

drawers or cabinets. Once completed, lab notebooks are transferred to a secure facility.

7. Sanofi also restricts access to its computer systems by maintaining advanced computer security systems and by protecting all of its trade secret, confidential and proprietary information with passwords.

8. Sanofi maintains an encrypted document management system, which serves as the secure repository for Sanofi's manufacturing, production, and development process documents.

**Defendant YUAN LI and Sanofi**

9. Defendant YUAN LI is a Chinese national residing in or about Somerset, New Jersey. On or about August 8, 2006, LI began working as a medicinal chemist at Sanofi, and is presently employed as a research scientist at Sanofi's Bridgewater, New Jersey facility.

10. On or about September 25, 2006, LI signed a "Conflict of Interest" statement regarding Li and her husband's dealings with Sanofi. Li checked each box demonstrating there was no conflict of interest.

11. On or about September 25, 2006, LI signed a certification relating to her receipt of Sanofi's statement of corporate ethics and code of business conduct. By signing the certification, LI acknowledged receiving documents that discuss Sanofi's confidential business information. LI signed that she understood that violation of the code could result in termination of her employment and other disciplinary action.

12. On or about September 25, 2006, LI signed a document in which she certified that she "never materially participated in any illegal act relating to the development and approval of drug products, including, but not limited to, submitting false data to governmental authorities and falsifying records that are maintained by pharmaceutical and consumer health companies."

13. On or about October 2, 2006, LI was provided with an "Inventions Agreement." As part of the agreement, LI acknowledged that she would be given access to confidential information and agreed that it was the property of Sanofi and would not be "used or disclosed to others" without Sanofi's consent. LI also acknowledged that:

> any research, improvements, and inventions made and/or conceived by the Employee, either alone or with others, any time during said employment by [Sanofi] . . . so far as they relate: (a) to products, ingredients, intermediaries, articles, or machines now or hereafter related to [Sanofi's] business; (b) to the art of making or using the same; or (c) to [Sanofi's] said research and research programs, and all Employee's right, title, and interest in and to the same, shall be regarded as made and held by Employee in a fiduciary capacity and solely for the benefit of [Sanofi], shall not

be disclosed to others without [Sanofi's] written consent, and shall be the sole and exclusive property of [Sanofi].

14. On or about October 2, 2006, LI was provided a document entitled, "Trade Secrets and Confidential Information," which, in pertinent part, read as follows:

> We take this opportunity to inform you of Company policy concerning trade secret and confidential information. Obviously in your work you will come into contact with corporate facilities, trade secrets and other confidential information, all of which constitute Company property. Examples of the type of information in question which have or may come into your possession include, but are not limited to, product formulae, research plans and programs, marketing plans, manufacturing and packaging processes . . . and related items.
>
> Such information is communicated to you on the explicit understanding that it is to be treated as confidential, is not to be communicated to anyone outside the Company and will remain confidential even in the event of your separation from the Company.

LI signed the document under the line: "I have read the above and agree to continue to abide by its terms this 2nd day of October 2006."

### Abby Pharmatech and LI's Theft and Sale of Sanofi Trade Secrets.

15. Abby Pharmatech, Inc. ("Abby Pharmatech") purports to be a company engaged in the sale and distribution of pharmaceuticals. It further purports to be the United States subsidiary of the Chinese chemical producer, Xiamon KAK Science & Technology Co. Ltd. of Xiamen, China. The company operates two websites: the top site, www.abbypharmatec.com, and abbypharmatech.com. On the website www.abbypharmatech.com, the following descriptors are provided:

> Abby Pharmatech, LLC - one of the world's leading R&D outsourcing companies - has the global resources and problem-solving culture to respond to the toughes [sic] R&D challenges from phamaceutical [sic] and biotechnology clients.
>
> Abby Pharmatech provides a broad line of products and services which parallel the drug discovery in pharmaceutical and biotechnology R&D. We support our customers thorough out [sic] their R&D process, covering hit generation, lead optimization, library synthesis and intermediates scale-ups.

> As a customer-centric and reserach-driven [*sic*] company, we are committed to meeting your needs. Through our specialty compounds and professional services, we will assist you to accomplish the R&D goals in a time-saving and cost-effective manner.

16. A 2010 U.S. Tax Form 1065, U.S. return of Partnership Information, lists Abby Pharmatech as a partnership located at 67 Montague Road, Newark, Delaware. The business is listed as starting on January 4, 2010, and LI is listed as one of two equal partners in the business.

17. In or about May 2011, Sanofi representatives became aware that Abby Pharmatech was advertising chemical compounds on its websites, which included chemical compounds which Sanofi was in the process of developing, and which had not yet been disclosed outside of Sanofi in any manner, including by means of a patent application or through the Chemical Abstract Service ("CAS")[1] registration process.

18. Specifically, by on or about June 24, 2011, the FBI learned that Sanofi representatives verified that over 6,000 Sanofi proprietary chemical structures appeared on an online database, SciFinder, as registered to Abby Pharmatech rather than Sanofi.

19. In addition, Sanofi's internal investigation revealed that at least five of the Sanofi proprietary chemical structures listed for sale by Abby Pharmatech were specifically researched and prepared by LI at Sanofi (the "Sanofi Trade Secrets"). Significantly, the Sanofi Trade Secrets were under development by Sanofi and were never publicized in any patent or scientific publication. Sanofi representatives have reviewed the lab notebooks corresponding to the Sanofi Trade Secrets and confirmed that LI had access to and, in fact, signed the notebooks. Sanofi representatives further confirmed that chemical structures of the compounds on Abby Pharmatech's site are the same as those in the lab notebooks used and accessed by LI in connection with her research and preparation of the Sanofi Trade Secrets. The FBI has also reviewed and confirmed this evidence.

20. Moreover, evidence recovered from LI's Sanofi-issued computer and her Sanofi work area has revealed that she possessed copies of Abby Pharmatech tax records, including a 2010 tax return, which listed her as a partner in Abby Pharmatech. Other records recovered from her Sanofi-issued laptop have revealed that LI had a document on her laptop entitled "AbbyPharmatech," which included a listing of 144,000 compounds. Among those compounds

---

[1] CAS is a worldwide chemical documentation service developed under the auspices of the American Chemical Society. Chemical compounds and substances, once they are disclosed, are often registered on the CAS Registry by the owners of compound or substance. The CAS registry contains over 62,000,000 chemical sequences. CAS Registry numbers are provided following an application process which includes ownership description.

were Sanofi compounds with corresponding Sanofi internal control numbers, which are not publicly available, and which could have only been discovered through unauthorized access to Sanofi's computer systems.

21.     Sanofi estimates the cost associated with developing the Sanofi chemical compounds and Sanofi Trade Secrets being misappropriated and sold by LI and Abby Pharmatech through the Abby Pharmatech websites, as well as the potential revenues lost as a result of LI and Abby Pharmatech's conduct, to be in the millions of dollars.